GRAND LODGE, INDEPENDENT ORDER OF ODD FELLOWS,
*v.* BARKER.

1. APPEAL AND ERROR — DECREE RIGHT ON MERITS — REASONS
   IMMATERIAL.
   If, for any reason, a decree dismissing a bill is correct, the
   reason given by the court below is immaterial.

2. BENEFICIAL ASSOCIATIONS — SUPERIOR AND SUBORDINATE BOD-
   IES—PROPERTY RIGHTS—BONA FIDE PURCHASERS.
   A subordinate lodge of Oddfellows instructed B., one of its
   members, to purchase certain real estate in his own name for
   the benefit of the lodge, which he did, taking a warranty
   deed.   The lodge paid the price through B., and, though it
   exercised all acts of ownership over the building, B. gave no
   deed to the lodge.   At a subsequent meeting the lodge voted
   to sell the property to B. on certain terms, with which he
   complied.   B. thereafter contracted to sell the property to
   M., who subsequently assigned to S., neither of whom at the
   time were members of the lodge.   *Held,* that, B. having paid
   the lodge a fair price for the property, and M. and S. being
   bona fide purchasers from him, the grand lodge, on dissolu-
   tion of the subordinate lodge, could not recover the property
   under provisions of its charter declaring that the property of
   subordinate lodges shall belong to such lodges so long as their
   charters are unreclaimed, and that on suspension or dissolu-
   tion their property of all kinds shall revert to the grand lodge.

Appeal from Van Buren; Carr, J.   Submitted April
7, 1905.   (Docket No. 45.)   Decided April 21, 1905.

Bill by the Grand Lodge, Independent Order of Odd-
fellows of the State of Michigan, against George H. Bark-
er and others to set aside a certain conveyance, and for an
accounting.   From a decree dismissing the bill, complain-
ant appeals.   Affirmed.

The complainant was organized in 1847.   It incorporated
June 5, 1867, under Act No. 199, Laws of 1865 (2 Comp.
Laws, §§ 7990–8000).   It reincorporated in September,
1899.   Those parts of its constitution and by-laws material

to this controversy are substantially as follows: The grand lodge has exclusive jurisdiction in Oddfellowship within the State, and is the supreme tribunal of the order. No lodge can be formed or continue to exist without its sanction. It may grant or suspend charters at its pleasure, for proper cause. It may receive appeals and redress grievances arising in subordinate lodges. It may originate and regulate the means of its own support, and may do all acts promotive of the interest of the order, or that appertain to it by ancient usage or custom, and are not in violation of the laws of the land or of the constitution and laws of the grand lodge of the United States. By section 2, art. 2, of its by-laws, it is provided that the funds, properties, etc., raised by subordinate lodges for the purpose of relieving sick and distressed brethren, and other charitable uses, are not liable to be divided in any manner among the members individually, but must remain for legitimate purposes the property of the lodge so long as its charter is unreclaimed and five members remain in good standing in the lodge. Section 3 reads as follows:

"In all cases where a lodge shall have been suspended or expelled, or its charter shall have been forfeited, the charter, funds, books, properties, and effects of all kinds shall revert to the grand lodge; and it shall be the duty of the last installed officers of such lodge to deliver immediately to the grand master or to the brother by him deputed to receive them, such funds and other effects as the lodge may have claim to, and any brother who shall be concerned in or give countenance to the divisions of the funds or other effects of a lodge under any circumstances, or who shall receive any part or share thereof, or be concerned in withholding any of the effects of a suspended, expelled, or defunct lodge from the grand lodge, shall be deemed unworthy of fellowship, and shall be debarred from all connection with the order until he shall have made full restitution and such reparation for the offense, as shall be pronounced satisfactory by a vote of the grand lodge."

In May, 1879, a subordinate lodge, known as "Covert Lodge, No. 328," was organized at Covert, Michigan,

and a charter duly granted.  That charter provided that said subordinate lodge shall render due obedience to the laws and mandates of the grand lodge; in default thereof its rights, powers, and privileges may be suspended.  The subordinate lodge rented a room for its meetings, and occupied it as tenant until July 1, 1885.

On June 16, 1885, at a regular meeting, the following proceedings were had, as appears by the record:

" Moved the lodge as a lodge buy the drug store building for the sum, as reported by the trustees, of $650. Motion seconded, and, after being thoroughly discussed, was carried.  Moved that Brother Barker be instructed to purchase the property.  Seconded and carried.  Moved that Brother George Barker be instructed to buy the property in his own name, and then give the lodge a contract to deed the property to whom they desired when they paid Brother Barker the cost and subsequent expenses of building.  Seconded and carried.  Moved and seconded that an order be drawn on the treasurer for $325, payable to Brother Barker when he gives lodge contract for the property."

The reason for taking the title to the property in the name of Mr. Barker was that the grantor did not want to deal with the lodge.  He was evidently not willing to take the obligation of the lodge for the unpaid purchase price. The lodge paid the $325 to Mr. Barker, who paid it to the grantor.  Subsequently the lodge paid the balance of the purchase price through Mr. Barker, but Mr. Barker gave no deed to the lodge.  The lodge meanwhile had entire charge of the building, paid the taxes, and received the rents until 1892.

At a regular meeting held February 9, 1892, the record shows the following proceedings:

" Moved and supported that the lodge sell lot No. 32 in the village of Covert as platted according to the village plat, and building thereon, subject to the lease, and reserve the second story of building for 20 years, and a way to get up to it, the lodge has the exclusive right to it for lodge purposes, to Brother G. H. Barker, for $450—$10.00 down, his note for one year of $290, his note in two years

for $50.00, his note in three years for $50.00, his note in four years for $50.00—each note to draw interest at 7 per cent. from date."

On October 11, 1898, Mr. Barker made a contract with one Morgan for the sale of the property. Mr. Morgan subsequently, on December 31, 1901, sold and assigned this contract to defendant Spivey and one Rumsey. Rumsey afterwards assigned to Spivey & Son. Covert lodge became defunct in 1896, returned its rituals, and on January 31, 1899, its charter was surrendered to the secretary of the grand lodge. Soon after an officer of the grand lodge took charge of what effects of the defunct lodge he was able to find. On March 7, 1904, this bill was filed against the defendants Barker and Spivey, praying that the conveyance to defendant George H. Barker should be held to have been taken for the use and benefit of the Covert lodge so long as it continued in existence; that said Barker be decreed to hold the premises in trust for the complainant; that the sale by the Covert lodge to Barker be set aside; that said Barker be decreed to convey the property to complainant; and that an accounting be had. The Spiveys entered no appearance, and an order pro confesso was rendered as to them. The defendant Barker answered, denying that complainant was entitled to relief. Proofs were taken in open court, and the bill dismissed.

*Lincoln H. Titus*, for complainant.

*Benjamin F. Heckert*, for defendants.

GRANT, J. ( *after stating the facts* ). The circuit judge dismissed the bill, holding that "the facts do not support a resulting trust, and none can be raised by parol in the case." We doubt if this conclusion is correct. We, however, find it unnecessary to determine the question. If for any reason the decree dismissing the bill is correct, the reason given by the court below is immaterial.

It is apparent that there was no bad faith or fraud on

the part of Mr. Barker, or any of the then members of the Covert lodge. All parties acted in good faith, and upon the belief that they were acting within their legal rights. The Covert lodge paid the consideration through Mr. Barker under a written resolution spread upon their minutes. After the full consideration was paid by the lodge, it still let the title rest in him. There is evidence tending to show that the lodge needed funds to pay sick benefits, and that the money paid by Barker was used by the lodge for legitimate purposes. There is also evidence tending to show that there was money on hand at the time the lodge disbanded, and that some had been divided among the members. Be this as it may, Mr. Barker paid a fair value for the land. The lodge received the money. If any of this or other money remained in the treasury at the time the lodge disbanded, it admittedly belonged to the complainant, and it could sue the parties who had the money. If it had been divided among the members, it could be recovered back from them. The lodge did not have the legal title. This was in Barker. The deed to Barker was a warranty deed. At the time of the sale to him it was deemed unnecessary to make out a deed, as the title already stood in him. He sold the property under a land contract to Mr. Morgan, agreeing to give a warranty deed. Mr. Morgan paid part of the purchase price, and then assigned his interest to defendants Spivey and Rumsey for $1,500, and Rumsey subsequently assigned his interest to defendant Spivey. Mr. Barker has been paid the purchase price, except $300. Neither Morgan nor the Spiveys were at the time members of the lodge, and there is no evidence showing or tending to show that either of them had any knowledge of any defect in the title, or of the relation that existed between Barker and the lodge. Both Morgan and the Spiveys must therefore be held to be bona fide purchasers. For this reason the decree must be affirmed, with costs.

CARPENTER, MCALVAY, MONTGOMERY, and HOOKER, JJ., concurred.